IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **VINCENT WILLIAMS,** | |
| **Plaintiff,** | |
| v. | **Case No. 11 C 6228** |
| **CITY OF CHICAGO, RICHARD M. DALEY, CHICAGO PUBLIC SCHOOLS, TIMOTHY MARTIN, and PAUL H. SCHWENDENER, INC.,** | **Hon. Harry D. Leinenweber** |
| **Defendants.** | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Chicago Board of Education's Motion to Dismiss Plaintiff's Second Amended Complaint. For the reasons stated herein, the Motion is granted and the Complaint is dismissed with prejudice.

**I. BACKGROUND**

Plaintiff brings seven counts, each arising from the same series of events. In 2000, Plaintiff's company, Citizens Electric, became the electrical subcontractor for Paul H. Schwendener, Inc. ("PSI") (then in a joint venture with Gonzales Construction Company) in the construction of the William K. Sullivan Elementary School. Citizens Electric's subcontract was allegedly worth more than $1.3 million. At some point, the contractual relationship broke down, and Citizen's Electric did not complete the project or

get paid the full contract amount.  Plaintiff now alleges that the Chicago Public Schools ("CPS") conspired with PSI to remove him and Citizens Electric from the project and to ensure that they were never paid for their time and effort.

Specifically, Plaintiff alleges that he is an African-American man and operated a certified Minority Business Enterprise (an "MBE").  Plaintiff argues that when he refused to allow his company to be operated as a "front" for using non-minority contractors, some Defendants (though it is not clear who) harassed and intimidated him and his employees in an attempt to force them off the project and replace him with a Hispanic contractor.  The harassment allegedly included verbal attacks, calling the police to remove Plaintiff and his employees from the project site, and allowing Plaintiff's electrical work and tools to be destroyed overnight at the guarded worksite.

At some point, Defendant Timothy Martin (then Chief Operating Officer of the Chicago Board of Education) intervened in the dispute and allegedly promised Plaintiff that he would be paid for the work that Citizens Electric had done to that point, as well as receiving 10% of the contract price as an incentive to leave the project.  Plaintiff claims that he never received the promised amount.

The Defendants allegedly held secret meetings and plotted how to avoid paying Plaintiff, even though all non-minority contractors

on the project were paid. Plaintiff alleges that this was done to financially compromise Citizens Electric. Finally, Plaintiff claims that he was subjected to an MBE certification process that non-minority contractors were not subject to, and that CPS' MBE contracting program is unconstitutional in that it is not "narrowly tailored" enough to perform its function well.

Many of the relevant dates are omitted from the narrative portion of Plaintiff's Complaint. However, the various documents that he attached as exhibits to his Complaint demonstrate, among other things, that the contract was entered into in October 2000 and that the relationship had already broken down irreparably by April 19, 2001. Judicially noticeable state court records show that Citizens Electric filed suit on June 1, 2001.

Count I of Plaintiff's Second Amended Complaint alleges a conspiracy to violate his civil rights. Count II alleges unjust enrichment on the part of the CPS and PSI. Count III alleges racial discrimination. Count IV alleges that CPS was grossly negligent in creating and administering a policy to level the construction playing field for minority contractors. Count V alleges both intentional and negligent infliction of emotional distress; though it does not identify particular defendants, it appears primarily aimed at PSI. Count VI alleges that CPS and Timothy Martin breached alleged oral and written modifications to Citizen Electric's subcontract. Count VII alleges that Defendants

conspired to provoke Plaintiff into breaching the subcontract by harassing him and refusing to pay him so that he could not finish the project.

Defendant Chicago Board of Education has moved to dismiss the suit under the doctrine of *res judicata*, noting that in 2001 Majestic Properties, d/b/a Citizens Electric, sued the Board and PSI. The suit alleged a breach of contract and sought an accounting, but Citizens Electric's Complaint was dismissed for want of prosecution.

## II.  LEGAL STANDARD

On a Motion to Dismiss under Rule 12(b)(6), the Court accepts as true all well-pleaded facts in the complaint and draws all inferences in Plaintiff's favor. *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Plaintiffs need not allege "detailed factual allegations," but must offer more than conclusions or "a formulaic recitation of the elements of the cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

*Res judicata* "promote[s] judicial economy by requiring parties to litigate, in one case, all rights arising out of the same set of operative facts and also to prevent the unjust burden that would result if a party could be forced to relitigate what is essentially

the same case." *River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883, 896 (Ill. 1998). A defendant may move under Rule 12(b)(6) to dismiss a complaint on *res judicata* grounds, if all of the relevant facts are ascertainable from the complaint or judicially noticeable records from the prior suit. *Ennenga v. Starns*, 677 F.3d 766, 2012 WL 1292768, at *13 n.6 (7th Cir. 2012). Illinois courts rendered the original judgment, and so Illinois law applies to determine whether *res judicata* bars this suit. *Arlin-Golf, LLC v. Village of Arlington Heights*, 631 F.3d 818, 821 (7th Cir. 2011).

In Illinois, *res judicata* bars a later suit if: "(1) there was a final judgment on the merits rendered by a court of competent jurisdiction, (2) there is an identity of cause of action, and (3) there is an identity of parties or their privies." *Id.* (citing *Nowak v. St. Rita High Sch.*, 757 N.E.2d 471, 477 (Ill. 2001)). The two suits need not be based on the same legal theory; it is enough if they arise out of the same set of operative facts. *Muhammad v. Oliver*, 547 F.3d 874, 876-877 (7th Cir. 2008). If *res judicata* applies, it bars re-litigation of the original claims, as well as claims that *could have been raised* in the first suit. *Chicago Title Land Trust Co. v. Potash Corp. of Saskatchewan Sales Ltd.*, 664 F.3d 1075, 1079-81(7th Cir. 2011). "*Res judicata* will not be applied where it would be fundamentally unfair to do so." *Nowak,* 757 N.E.2d at 477.

**III. <u>DISCUSSION</u>**

Defendant argues that Plaintiff's suit is barred by the dismissal of the 2001 breach of contract suit. Plaintiff does not appear to dispute that the parties are the same as, or in privity with, the parties to the 2001 suit. Rightly so. Court records indicate that the Board of Education was a Defendant in the 2001 suit, and that the suit was brought by Majestic Properties, d/b/a Citizens Electric. Plaintiff brings the current suit as founder and sole assignee of Citizens Electric. Accordingly, the Court discusses the final judgment and identity of cause of action factors below.

**A. Final Judgment**

Plaintiff argues that Citizens Electric was dismissed from the 2001 suit for failure to prosecute, and that there was accordingly no final judgment on the claims. Defendant argues that the dismissal was a sanction for failing to appear pursuant to a court order. The order itself, however, did note that Majestic Property/Citizens Electric failed to appear, but dismissed Majestic Properties "as a plaintiff in this case for want of prosecution[.]" *Majestic Properties v. Chicago Bd. of Ed., et al.,* 01-L-6524 (Cook Cty. Cir. Ct. June 18, 2003).

In Illinois, a dismissal for want of prosecution is not a final judgment until Plaintiff's time to re-file has run — that is, until the later of one year from the dismissal date or the

expiration of the statute of limitations. *See Hudson v. City of Chicago*, 889 N.E.2d 210, 214 and n.1, 224 (Ill. 2008). The longest statute of limitations from the 2001 suit — for breach of a written contract — is 10 years. 735 Ill. Comp. Stat. 5/13-206. Given that the cause of action accrued by the time that Plaintiff sued (June 1, 2001), and that he has alleged no subsequent promises to pay, the limitations period ran out by June 1, 2011 – three months before Plaintiff sued here.

Plaintiff argues that the limitations period did not run, and that the dismissal for want of prosecution is therefore non-final. First, he argues that the limitations period was tolled while he was incarcerated (from roughly mid-2004 until at least mid-2007). That is no longer the law in Illinois, however. *See* 735 Ill. Comp. Stat. 5/13-211; *Schweihs v. Burdick*, 96 F.3d 917, 919 (7th Cir. 1996).

Second, Plaintiff argues that CPS's attorney committed fraud on the court in 2005, thereby voiding any judgment in that case, in that the attorney told the Circuit Court judge that the parties had agreed to settle the suit, when Plaintiff had never agreed to settle. First, contrary to Plaintiff's assertions, there is no claim of fraud on the court in his Complaint. Second, his argument rests on a clear misunderstanding of the record. Citizens Electric was not a party to the case by the time the case was referred to mediation and ultimately settled (between PSI and CPS). Citizens

Electric was dismissed (for the second time) as a plaintiff for failure to prosecute on June 18, 2003, and a default judgment was entered against it on a counterclaim in August 2003. Accordingly, Citizens Electric need not have agreed to mediate or settle in 2004 and 2005. There being no fraud on the court and nothing else to toll the limitations period, the dismissal of the 2001 case became a final judgment in June 2011, three months before the instant case was filed.

### B. Identity of Actions

For *res judicata* to apply, the second suit need only arise out of the same operative facts as the first, regardless of whether they are pled under different theories of liability or require the same evidence. *See Muhammad,* 547 F.3d at 876 (a contract suit barred a later federal civil rights suit); *River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883, 894 (Ill. 1998) (a § 1983 claim barred later implied contract and abuse of government power claims). CPS argues that both the current and 2001 suits arise out of the 2001 breakdown in the relationship between Citizens Electric, PSI, and CPS.

Plaintiff counters that this case is distinct in that it addresses racial discrimination by CPS. That argument, however, concedes that the claims arising out of the business relationship between Citizens Electric, PSI, and CPS arise out of the same transaction as the 2001 suit. Accordingly, Count II (unjust

enrichment), Count VI (breach of oral and written modifications to the contract) and Count VII (conspiracy to provoke a breach of contract), as alleged against CPS, are barred by *res judicata.* These claims having been abandoned in state court, there is nothing unjust in precluding re-litigation here. Alternatively, Plaintiff's claims are time-barred, and are not continuing violations merely because he has not been paid. *See* 735 Ill. Comp. Stat. 5/13-205; 735 Ill. Comp. Stat. 5/13-206; *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 85 (Ill. 2003) (ongoing harm from an original violation is not continuing tort). The remaining claims are addressed below.

### C. Remainder of Claims

#### *1. Count I*

As to Count I, which Plaintiff describes in his response as a § 1983 conspiracy claim, Plaintiff claims that CPS and PSI's actions in 2001 were a conspiracy to deprive him of his civil rights, and that he was unconstitutionally coerced into participating in an unconstitutional MBE certification program. As to the first claim, it largely just adds allegations of discriminatory motive to the conduct and injury from the 2001 suit; it is barred by *res judicata*. *See Muhammad,* 547 F.3d at 876.

Plaintiff's challenge to his enrollment in the MBE program is likewise an important part of the 2001 dispute, but in any event is also barred by the two-year statute of limitations for Illinois

§ 1983 claims. *Gomez v. Randle,* --- F.3d ---, 2012 WL 1660975, *3 (7th Cir. 2012). (Where a complaint demonstrates that its claims are time-barred, it is subject to dismissal for failure to state a claim. *Logan v. Wilkins*, 644 F.3d 577, 582-583 (7th Cir. 2011).)

In arguing that the 2001 suit does not bar his discrimination claims, Plaintiff points to Judge James Moran's invalidation of the City of Chicago's MBE program in 2003, and to the CPS Board's findings of fact in support of the 2006 revision to its MBE program. Plaintiff argues that these "more recent occurrences of racial discrimination" could not have been addressed in 2001, but does not actually claim that *he* suffered any alleged discrimination after 2001. (Nor does Plaintiff claim that he was unaware of his alleged harm from the MBE program until within two years of filing suit. *Cf. Parks v. Kownacki*, 737 N.E.2d 287, 294 (Ill. 2000) (limitations period begins to run when a plaintiff knew or reasonably should have known of his injury and that it was wrongfully caused).) Accordingly, these allegations arise from the same set of facts the previous suit, and are also time-barred.

### *2. Count III*

Count III, generically entitled "Racial Discrimination," likewise appears to be based on § 1983. In that Count, Plaintiff alleges that (unspecified) defendants: unfairly breached the subcontract by replacing Citizens Electric with a less qualified Hispanic contractor, circumvented normal procedures to avoid paying

Plaintiff, imposed a greater retainage rate upon Plaintiff than on non-minority contractors, pressured Plaintiff to allow his company to be used as a "front," harassed and intimidated Plaintiff and his employees, and held secret meetings where Plaintiff's work and race were discussed. For the reasons discussed above, however, this claim is barred both by *res judicata* (in that it arises from the same dispute as the 2001 suit, albeit with new allegations of discriminatory motive and harassment), and by the statute of limitations for a § 1983 claim. The findings of Judge Moran in 2003 and the Board of Education in 2006, where they are not alleged to have impacted Plaintiff or triggered his discovery of a harm to him, did not toll the limitations period until within two years of Plaintiff filing this suit.

### *3. Count IV*

In Count IV, entitled "negligence," Plaintiff alleges that CPS was responsible "for assuring fairness and competition for all contractors, including African Americans," but administered its MBE program so negligently that it violated an alleged fiduciary duty to Plaintiff. Plaintiff alleges that if CPS had adopted its current payment policy earlier (which requires general contractors like PSI to pay minority sub-contractors within 15 days of being paid by the City), the alleged conspiracy against Plaintiff would have been much harder to carry out. Accordingly, this claim, too, arises out of the same nucleus of operative facts as the 2001 suit

and is barred by *res judicata*. Alternatively, this claim is barred by the statute of limitations – five years for claims for breach of fiduciary duty (assuming *arguendo* that there was such a duty here). *Halperin v. Halperin*, No. 10 CV 4104, 2012 WL 832786, at *4 (N.D. Ill. Mar. 8, 2012).

### *4. Count V*

Count V, which alleges intentional and negligent infliction of emotional distress, again centers on the alleged conspiracy and harassment during the 2000-2001 conflict, and therefore could have been brought as part of the original suit. *See, Czarniecki v. City of Chicago*, 633 F.3d 545, 549 (7th Cir. 2011) (adding a state-law claim for emotional distress does not prevent the application of *res judicata*). Alternatively, the claim clearly is barred by the statute of limitations. *See Gilmore v. Bayer Corp.*, Civil No. 09-986, 2012 WL 1076298, at *2 (S.D. Ill. 2012).

### IV. CONCLUSION

For the reasons stated herein, the Court grants the Board of Education's Motion to Dismiss Plaintiff's Second Amended Complaint as to it (and, by association, its former Chief Operating Officer Timothy Martin, sued here in his official capacity). Plaintiff has already dismissed the City and former Mayor Daley. The reasoning above applies equally to PSI, a party to the 2001 suit. Accordingly, the Court *sua sponte* dismisses the claim as to PSI, also on *res judicata* grounds. Given the basis for the dismissal

and the number of times Plaintiff has already amended his pleadings, the Court dismisses the suit with prejudice.

**IT IS SO ORDERED.**

                                Harry D. Leinenweber, Judge
                                United States District Court

**DATE:** 6/12/2012